UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NIKITA MUKHIN,<br><br>                    Petitioner,<br><br>     v.<br><br>MICHAEL ROSE, Field Office Director of Enforcement and Removal Operations, Philadelphia Field Office, Immigration and Customs Enforcement; CRAIG LOWE, Warden of Pike County Correctional Facility,<br><br>                    Respondents. | CIVIL ACTION NO. 3:26-CV-00108<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Petitioner, Nikita Mukhin ("Mukhin"), a Russian national with asylee status, brings this petition for writ of habeas corpus. (Doc. 1). On January 19, 2026, Mukhin filed the instant petition, requesting that Respondents Michael Rose and Craig Lowe ("Lowe")[1] release him from custody at the Pike County Correctional Facility in Lords Valley, Pennsylvania or

---

[1] The government asserts that pursuant to the "immediate custodian rule," the only proper respondent in this case is Craig Lowe ("Lowe"), Warden of the Pike County Correctional Facility. (Doc. 4, at 1). "The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242); 28 U.S.C. § 2243 ("[t]he writ, or order to show cause shall be directed to the person having custody of the person detained"); *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 444 (3d Cir. 2021) ("if a § 2241 petitioner does not adhere to the immediate custodian rule, then the district court lacks jurisdiction to entertain the petition"). As Mukhin is detained at the Pike County Correctional Facility, Lowe is the proper respondent. (Doc. 1, at 4); *see Rumsfeld*, 542 U.S. at 434. As such, Respondent Michael Rose is **DISMISSED**. However, the government will be bound by the Court's judgment because Lowe is acting as an agent of the federal government by detaining Mukhin on behalf of Immigration and Customs Enforcement ("ICE"). *See Madera v. Decker*, 18 Civ. 7314, 2018 WL 10602037, at *9-*10 (S.D.N.Y. Sep. 28, 2018) (finding the warden acts as an agent of the ICE regional director when ICE makes initial custody determinations including setting of a bond and review of conditions of release); *Santana-Rivas v. Warden of Clinton County Correctional Facility*, 3:25-cv-01896, 2025 U.S. Dist. LEXIS 252280, at *22 (M.D. Pa. Nov. 13, 2025) (finding same).

provide him with an individualized bond hearing before an immigration judge within fourteen days. (Doc. 1). For the following reasons, Mukhin's petition (Doc. 1) is **GRANTED,** and Lowe is **ORDERED** to release Mukhin from custody.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The following background and factual summary are derived from Mukhin's petition and the exhibits thereto. (Doc. 1). Mukhin is a Russian citizen who has lived in the United States since December 28, 2022 and was granted asylum by an immigration judge on September 25, 2025. (Doc. 1, at 1). On December 28, 2022, Mukhin entered the United States by presenting himself to U.S. Customs and Boarder Protection ("CBP") at the San Ysidro, California port of entry and expressing his intent to seek asylum in the United States. (Doc. 1, at 1). CBP initially placed Mukhin in mandatory detention pursuant to 8 U.S.C. § 1225(b)(1)(A)(ii). (Doc. 1, at 1). After interviewing Mukin, CBP granted him permission to lawfully enter the United States on a temporary basis and humanitarian parole under 8 U.S.C. § 1182(d)(5), while Mukhin pursued his application for asylum. (Doc. 1, at 2).

When paroled into the United States on December 28, 2022, Mukhin was issued an I-94 Record of Entry and Notice to Appear in immigration court. (Doc. 1, at 2; Doc. 1-3; Doc. 1-4). As a condition of his parole, Mukhin was required to attend Immigration and Customs Enforcement ("ICE") check-in appointments. (Doc. 1, at 2). During his parole, Mukhin submitted a timely asylum application, attended his immigration court hearings, and obtained employment authorization and a social security card. (Doc. 1, at 2).

Following domestic disputes with his partner in January 2025, Mukhin was arrested pursuant to a warrant and detained by ICE on April 16, 2025. (Doc. 1, at 2; Doc. 4-3). The domestic disputes were fully dismissed, but Mukhin has since remained in mandatory

detention pursuant to 8 U.S.C. § 1225(b)(2). (Doc. 1, at 2). Mukhin continued to pursue his asylum application before the immigration court, asserting he fears returning to Russia because he is a gay male. (Doc. 1, at 2). On September 25, 2025, an immigration judge granted Mukhin's asylum claim. (Doc. 1, at 3; Doc. 1-5). On September 30, 2025, the Department of Homeland Security ("DHS") filed a notice of appeal of Mukhin's grant of asylum with the Board of Immigration Appeals ("BIA"), which remains pending. (Doc. 1, at 3). Petitioner has made several formal requests to be released from custody pending his appeal, all of which have been denied. (Doc. 1, at 3; Doc. 1-6).

Mukhin filed a petition for writ of habeas corpus on January 19, 2026. (Doc. 1). Pursuant to the Court's Order to Show Cause (Doc. 2), the government filed a response to Mukhin's petition on January 27, 2026. (Doc. 4). Mukhin filed a traverse on February 4, 2026. Accordingly, the petition is ripe for disposition.

## II.   LEGAL STANDARD

28 U.S.C. § 2241 governs district courts' power to grant the writ of habeas corpus. Under 28 U.S.C. § 2241(b), the writ of habeas corpus extends to petitioners "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States." Claims where non-citizens challenge immigration enforcement-related detention "fall within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). "For 'core habeas petitions,' 'jurisdiction lies in only one district: the district of confinement.'" *J. G. G.*, 604 U.S. at 672. While reviewing a noncitizen's habeas petition, courts evaluate whether the government complied with regulatory, statutory, and constitutional protections for noncitizens. *See Martinez v. McAleenan,*

385 F. Supp. 3d 349 (S.D.N.Y. 2019) (finding ICE failed to comply with regulatory and constitutional notice requirements prior to detaining a non-citizen petitioner and granting the petitioner's habeas petition). A court may order a bond hearing if the Court determines that a noncitizen habeas petitioner is entitled to one under relevant constitutional or statutory protections. *See A.L. v. Oddo*, 761 F. Supp. 3d 822, 827 (W.D. Pa. 2025) (finding that a noncitizen habeas petitioner was entitled to a bond hearing under the due process clause of the Fifth Amendment); *see also Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2025 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding a habeas petitioner was entitled to a bond hearing under relevant statutory protections).

### III.   JURISDICTION

"[F]ederal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 267 (3d Cir. 2016) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). 28 U.S.C. § 2241 empowers federal courts to grant writs of habeas corpus where a petitioner is "in custody under or by color of the authority of the United States. . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(1), (3). Recently, in *Khalil v. President, United States*, 164 F.4th 259, 273 (3d Cir. 2026), the Third Circuit determined that the Immigration and Nationality Act strips district courts of subject matter jurisdiction to hear claims arising from removal actions or proceedings, when the claims could be addressed on a petition for review of a final order of removal ("PFR"). However, the Third Circuit clarified that district courts retain jurisdiction over habeas petitions presenting "now or never" questions of law, that cannot be meaningfully reviewed later, on a PFR. *Kahlil*, 164 F.4th at 273-74.

4

Habeas actions based on whether a petitioner is detained pursuant to the appropriate statute, 8 U.S.C. § 1225(b) or 8 U.S.C. § 1226(a), and is entitled to a bond hearing are "now or never" legal questions that remain in the jurisdiction of district courts. *See Kahlil*, 164 F.4th at 274-77; *see also Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (finding 8 U.S.C. § 1252(b)(9) does not present a jurisdictional bar to challenges unrelated to review of an order of removal, the government's decision to detain in the first place, and the process by which removability will be determined). A determination of whether § 1225(b) or § 1226(a) applies to a petitioner also determines whether that petitioner is entitled to a bond hearing. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 126 (BIA 2025) (holding immigration judges lack authority to hear bond requests for noncitizens detained under § 1225(b)); *see Alexey Kashranov v. J.L. Jamison, et al.*, No. 2:25-CV-05555, 2025 WL 3188399 at *5 (E.D. Pa. Nov. 14, 2025) (citing § 1226(a)) (finding § 1226(a) allows for detainees to be released on conditional parole or bond). Such claims do not arise from removal proceedings, they arise "now." If left to be raised on a PFR, the petitioner will never get the opportunity for an immigration judge to determine their eligibility for bond during removal proceedings. *See Kahlil*, 164 F.4th at 274-77 ("when [noncitizens] raise claims that courts cannot 'meaningfully' review through the PFR process, those claims do not 'aris[e] from' the 'action[s] taken' or 'proceeding[s] brought' to remove them").

Likewise, habeas actions based on whether a petitioner is subject to unconstitutionally lengthy detention remain in the jurisdiction of district courts. *Kahlil*, 164 F.4th at 277-79 (holding detention-specific claims, like length and conditions-of-confinement claims, do not arise from removal proceedings and can be addressed by district courts); *see Jennings*, 583 U.S. at 294. The question of whether a petitioner's detention has been unconstitutionally long is

wholly collateral to removal proceedings and cannot be meaningfully reviewed on a PFR. *Kahlil*, 164 F.4th at 278-79 (finding that length of confinement without a bond hearing claim "does not get channeled into the PFR review process"). Thus, the Court retains jurisdiction because the legal questions of whether § 1225(b) or § 1226(a) applies to Mukhin, whether Mukhin's detention has been unconstitutionally long, and whether Mukhin is entitled to a bond hearing are wholly collateral to his removal proceedings and cannot be meaningfully reviewed on a PFR. *Jennings*, 583 U.S. at 294; *Kahlil*, 164 F.4th at 274-79.

## IV.   DISCUSSION

Mukhin contends that his mandatory detention under § 1225(b) is both a violation of the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. (Doc. 1, at 9). Mukhin reasons that § 1225(b) does not apply to individuals like Mukhin who have already been paroled into the United States. (Doc. 1, at 9). Mukhin also avers that his detention without a bond hearing during the pendency of his removal proceedings has become unreasonably long and violates due process. (Doc. 1, at 9). Lowe contends that Mukhin was properly designated an "arriving alien" and is subject to mandatory detention under § 1225(b), which comports with due process. (Doc. 4, at 8-19). Lowe also contends that the *German Santos* factors for determining whether detention is unreasonable are inapplicable to Mukhin's detention under § 1225(b), and that even if *German Santos* were applicable, Mukhin's detention still could not be considered unreasonable. (Doc. 4, at 23). The Court will first address whether Mukhin was properly detained under § 1225(b). The Court will then address whether Mukhin's detention violates due process.

A.  MUKHIN WAS IMPROPERLY DETAINED UNDER 8 U.S.C. 1225(B)(2)(A), WHEN HE
SHOULD HAVE BEEN DETAINED UNDER 8 U.S.C. § 1226(A).

Mukhin was improperly detained under 8 U.S.C. 1225(b)(2)(A), when he should have been detained under 8 U.S.C. § 1226(a). Mukhin avers that noncitizens who have already been paroled into the United States are properly detained under § 1226(a), not § 1225(b)(2). (Doc. 1, at 9-10). Mukhin reasons that § 1225(b) authorizes the government to detain noncitizens seeking admission, while § 1226(a) authorizes the government to detain certain noncitizens already in the country pending removal proceedings. (Doc. 5, at 5). Mukhin further reasons that after DHS released him on humanitarian parole, they re-detained him pursuant to a warrant of arrest as authorized by § 1226. (Doc. 5, at 8-9). Lowe counters that Mukhin is properly classified as an "arriving alien" and falls squarely within the statutory definition of noncitizens subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A), under which he is ineligible for release on bond. (Doc. 4, at 8-19). Lowe also avers that because Mukhin did not enter the United States on an order of release on recognizance but on humanitarian parole, he is still considered an "arriving alien," and he is not entitled to any legal rights, other than those expressly provided by statute. (Doc. 4, at 9, 15).

The INA is a comprehensive statute regulating immigration, which Congress has repeatedly reworked since its enactment in 1952. *Kashranov*, 2025 WL 3188399, at *1. Before 1996, the INA provided that noncitizens who presented themselves at ports of entry were subject to mandatory detention during exclusion proceedings, while noncitizens who evaded inspection by entering elsewhere were afforded the opportunity to obtain release during deportation proceedings. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 222-223 (BIA 2025) (citing 8 U.S.C. §§ 1225(a); 1251 (1994)). In 1996, the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") amended the INA to include § 1225 and § 1226, in

7

part, to end the preferential treatment of noncitizens who evaded inspection when entering the United States. OMNIBUS CONSOLIDATED APPROPRIATIONS ACT, 1997, PL 104–208, September 30, 1996, 110 Stat 3009; H.R. Rep. No. 104-469, at 225 (1996); *see Hurtado*, 29 I. & N. Dec. at 223. With the IIRIRA, Congress eliminated separate exclusion and deportation hearings and combined them into a single removal proceeding, regardless of where the noncitizen entered the United States. 8 U.S.C. § 1229a. Since 1996, only noncitizens who are admitted are subject to deportation, while noncitizens who have never been formally admitted are deemed inadmissible. 8 U.S.C. § 1182(a).

Pursuant to the IIRIRA, when a noncitizen enters the United States at a designated port of entry, they are considered an "arriving alien" and are generally subject to expedited removal, unless they indicate an intention to apply for asylum. 8 U.S.C. §§ 1225(b)(1)(A)(i)-(ii). If the asylum officer finds a noncitizen's asserted fear of persecution to be credible, the noncitizen's asylum claim will be fully considered in a standard removal hearing. 8 C.F.R. § 208.30(f); 8 U.S.C. § 1225(b)(1)(B)(ii). Noncitizens are subject to detention while an immigration judge considers their asylum application; however, DHS may grant such noncitizens parole into the United States for humanitarian purposes. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 U.S.C. § 1182(d)(5). Humanitarian parole is not considered admission into the United States, and humanitarian parole automatically terminates without written notice upon the noncitizen's departure from the United States or the expiration of time for which the parole was authorized. 8 U.S.C. § 118(d)(5)(A). If the purpose of the parole has been served, then the noncitizen will be returned to the custody from which he or she was paroled. 8 U.S.C. § 1182(d)(5). However, the government must first provide written notice of and an opportunity for the noncitizen to respond to its determination that the purpose of

parole was accomplished or its determination that "neither humanitarian reasons nor public benefit warrants the continued presence of an alien in the United States." 8 C.F.R. § 212.5(e)(2)(i); 8 U.S.C. § 1182(d)(5). The parties dispute whether a noncitizen, like Mukhin, who DHS released on humanitarian parole then re-detained via warrant is subject to detention under §1225(b)(2) or §1226(a). (Doc. 1, at 9-10; Doc. 4, at 10).

Section 1225(b)(2)(A) of the INA is a catchall provision, that applies to applicants for admission not otherwise covered by § 1225(b)(1). *Jennings*, 583 U.S. at 287. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained [pending removal hearings]." Pursuant to this provision, noncitizens are subject to mandatory detention while their removal proceedings are pending, but they may be released "for urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (citing § 1182(d)(5)(A)); *Kashranov*, 2025 WL 3188399, at *1. To trigger § 1225(b)(2)(A), an examining immigration officer must determine that an individual is (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted. *Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *Kashranov*, 2025 WL 3188399, at *6. Section 1225(b)(2)(A) applies only to a noncitizen who is both an "applicant for admission" and "seeking admission." *Kashranov*, 2025 WL 3188399, at *6; *Bethancourt Soto v. Soto*, No. 25-cv-16200, 2025 WL 2976572, at *5 (D.N.J. Oct. 22, 2025) (collecting cases).

The INA defines an applicant for admission as a noncitizen who is "present in the United States who has not been admitted or who arrives in the United States." § 1225(a)(1); *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018). The phrase "alien seeking admission" is not

9

defined in § 1225, so the Court must construe the phrase based upon its ordinary meaning and statutory context. *See Kashranov*, 2025 WL 3188399, at *6; *see also J.A.M. v. Streeval*, No. 4:25-cv-34 2 (DCL), 2025 WL 3050094, at *5 (M.D. Ga. Nov. 1, 2025). District courts in the Third Circuit and across the country have found that "seeking admission" describes active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry. *Kashranov*, 2025 WL 3188399, at *6; *Del Cid*, 2025 WL2985150, at *16 n. 7; *J.A.M.*, 2025 WL 3050094, at *3; *Ochoa Ochoa v. Noem*, No. 25 CV 10865, 2025 WL 2938779, at *6 (N.D. Ill. Oct. 16, 2025); *see Cantu-Cortes*, 2025 WL 3171639, at *2 (quoting *Vazquez v. Feeley*, No. 25-cv-01542, 2025 WL2676082, at *13 (D. Nev. Sept. 17, 2025)) (finding a noncitizen who has already been residing in the United States cannot be characterized as "seeking entry" consistent with the ordinary meaning of that phrase). This reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*, 583, U.S. 281, 285 (2018), that § 1225(b) "applies primarily to aliens seeking entry into the United States," those who are "seeking admission into the country." *See Soto*, 2025 WL 2976572, at *6. This reading also preserves a distinction between "seeking admission" and the separate term "applicant for admission," ensuring that each phrase carries independent meaning.[2] *Kashranov*, 2025 WL 3188399, at *6.

Section 1226 of the INA applies to noncitizens who are not seeking admission but are already present in the United States. *Jennings*, 583 U.S. at 288-89. Section 1226(a) provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained

---

[2] The Court acknowledges that the Fifth Circuit recently issued a decision in *Buenrostro-Mendez v. Bondi*, No. 25-20496, 2026 WL 323330, at *5 (5th Cir. 2026), holding that under the INA an "applicant for admission" is necessarily someone who is "seeking admission." However, *Buenrostro-Mendez* is not binding on the Court.

pending a decision on whether the alien is to be removed from the United States." The Attorney General may release a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(2). Pursuant to § 1226(a), "[i]mmigration authorities make an initial custody determination, after which the noncitizen may request a bond hearing before an immigration judge." *Kashranov*, 2025 WL 3188399, at *1 (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). At their bond hearing, a noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397-98 (2019); *see Kashranov*, 2025 WL 3188399, at *1.

On July 8, 2025, ICE and the Department of Justice ("DOJ") announced a new practice, in which that all applicants for admission, regardless of when the noncitizen was apprehended, are now subject to the mandatory detention provision of § 1225(b)(2)(A). Interim Guidance Regarding Detention Authority for Applicants for Admission, https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited Feb. 20, 2026). On September 5, 2025, the BIA adopted the DOJs new position, holding that immigration judges have no authority to consider bond requests for any person who entered the United States without admission, finding all applicants for admission are subject to detention under § 1225(b)(2)(A) and are ineligible for release on bond. *Matter of Yajure Hurtado*, 29 I. &N. Dec. 216 (BIA 2025). Several district courts across the country, including courts in the Third Circuit, reject this new policy and the application of § 1225(b)(2)(A) to noncitizens who have been residing in the United States for a period of time before they are detained by ICE pending removal proceedings. *Cantu-Cortes v. O'Neill*, No. 25-cv-6338, 2021 WL 3171639, at *2 (E.D. Pa. Nov. 13, 2025) (finding § 1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United

States for approximately 25 years before ICE detained him); *Kashranov,* 2025 WL 3188399, at *1 (finding "mandatory detention only applies for aliens who are "seeking admission," and petition who lived in the United States for almost two years was not seeking admission but "already here"); *Del Cid v. Bondi*, 2025 WL 2985150 at *14-17 (finding noncitizens who had been in the United States for over two years when arrested are subject to § 1226(a) not § 1225); *Soto*, 2025 WL 2976572 at *7 (collecting cases).

Section 1226(a), not § 1225(b)(2)(A), applies to Mukhin's detention. Since his release on humanitarian parole, Mukhin has resided in the United States for over three years. (Doc. 1, at 2). Section 1225(b)(2)(A) applies to noncitizens who are applicants for admission *and* are seeking admission to the United States. *See Martinez v. Hyde*, 792 F. Supp. 3d, 211, 214 (D. Mass. July 24, 2025), *see Kashranov,* 2025 WL 3188399, at *6; *see also Soto*, 2025 WL 2976572, at *5 (collecting cases). Mukhin is not actively attempting to come into the United States; based on the plain meaning of the phrase "seeking admission," Mukhin sought admission when he entered the United States on December 28, 2022.[3] (Doc. 1, at 1-2); *see Kashranov,* 2025 WL 3188399, at *6 ("seeking admission describes active and ongoing conduct— physically attempting to come into the United States, typically at a border or port of entry and presenting oneself for inspection and authorization"). Since entering the United States three years ago, Mukhin has been a productive member of society, obtaining work authorization and complying with the terms of his parole. (Doc. 1, at 2). A noncitizen who has established themselves in the United States, making connections since their entry, is no longer at the

---

[3] Mukhin also asserts that, based on its plain text, § 1225(b)(1)(A)(iii)(II) does not apply to noncitizens who have already been paroled into the United States. However, the court need not address this argument because on April 17, 2025, ICE detained Mukhin pursuant to 8 U.S.C. § 1225(b)(2)(A) not § 1225(b)(1)(A)(iii)(II). (Doc. 1, at 2, 10; Doc. 4, at 8).

"threshold of initial entry." *See Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020); *see also Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025).

The Court does not find persuasive the government's contention that Mukhin is effectively still at the border because he entered the United States on parole rather than an order of release on recognizance. (Doc. 4, at 10-12). If the Court adopted the government's argument that noncitizens who enter the United States on an order of recognizance are subject to detention under § 1226 and afforded release on bond, while noncitizens who are re-detained after years in the United States on humanitarian parole are subject to mandatory detention under § 1225(b)(2), it would recreate the incentive for noncitizens to avoid inspection that the IIRIRA was enacted to eliminate. H.R. Rep. No. 104-469, at 225 (1996); *see Hurtado*, 29 I. & N. Dec. at 223. The Court instead finds persuasive Mukhin's argument that his arrest and detention by ICE pursuant to a warrant comports with § 1226 not § 1225. (Doc. 5, at 9-10).

Section 1226(a) provides that a noncitizen may be arrested and detained pending removal "on a warrant issued by the Attorney General." Whereas § 1225 does not include any provisions on warrants. Mukhin's arrest and detention on a warrant indicates that he should be detained under § 1226(a), not § 1225(b)(2). *See A-J-R v. Rokosky*, No. 25-17279, 2026 WL 25056, at *5 (D.N.J. Jan 5, 2026) (finding petitioner re-detained after release on humanitarian parole could only be properly detained under § 1226(a) because he was not re-detained under parole revocation procedures); *see also Gomes v. Hyde*, 804 F. Supp. 3d 265, 276-77 (D. Mass. 2025) (finding detention under § 1226(a) was applicable to petitioner who was arrested on a warrant, not because humanitarian parole under § 1182(d)(5)(a) automatically terminated). Further, § 1226(a) applies to applicants for admission, like Mukhin, who are not actively seeking admission but who have been residing in the United

13

States for an extended period of time. *Cantu-Cortes*, 2021 WL 3171639, at *2 (finding §

1226(a), not § 1225(b)(2)(A), applicable for petitioner who resided in the United States for

approximately 25 years before ICE detained him); *Kashranov*, 2025 WL 3188399, at *1

(finding "mandatory detention only applies for aliens who are "seeking admission," and

petition who lived in the United States for almost two years was not seeking admission but

"already here").

B. MUKHIN'S DUE PROCESS RIGHTS WERE VIOLATED WHEN HE WAS IMPROPERLY SUBJECTED TO MANDATORY DETENTION.

Mukhin's continued mandatory detention under § 1225(b)(2)(A) violates his

procedural due process rights. Mukhin avers that the government's detention of him without

a bond hearing and determination of whether he is a flight or public safety risk violates his

right to due process. (Doc. 1, at 9). Lowe counters that as an immigration detainee, Mukhin

has no constitutional right to release on bond when held pursuant to a statutory provision

requiring mandatory detention. (Doc. 4, at 13).

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or

property without due process of law." U.S. Const. amend. V. The Due Process Clause of the

Fifth Amendment "applies to all 'persons' within the United States, including [noncitizens],

whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533

U.S. at 693. While noncitizens at the threshold of initial entry cannot claim due process rights

beyond the procedure authorized by Congress, noncitizens released on parole under 8 U.S.C.

§ 1182(d)(5), which is granted on a case-by-case basis for urgent humanitarian reasons or

significant public benefit, still have a right to habeas relief. *Thuraissigiam*, 591 U.S. 103, 138-

39 (2020); *Francois v. Noem*, No: 25-7334, 2026 WL 27565, at *5-*6 (E.D. Pa. Jan. 5, 2026)

(finding that when a noncitizen paroled under § 1182(d)(5) is later apprehended, detention is

proper under § 1226(a) not § 1225(b)(2)); *Sharapov v. O'Neil*, No: 26-38, 2026 WL 146668, at *3 (E.D. Pa. Jan 26, 2026) (finding mandatory detention without the opportunity for a bond hearing of a noncitizen paroled under § 1182(d)(5) violated the INA); *Rios Porras v. O'Neill*, No. 25-6801, 2025 WL 3708900, at *1 (E.D. Pa. Dec. 22, 2025) (finding a noncitizen paroled under § 1182(d)(5) was illegally detained without a bond hearing under § 1225(b)(2)).

To determine whether a government action violates due process, courts apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). The *Mathews* balancing test weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation and the probable value of additional safeguards; and (3) the government's interest, including administrative burdens of additional procedures.[4] *Mathews,* 424 U.S. at 334.

The first factor, private interest implicated by the government action, weighs heavily in Mukhin's favor because Lowe has deprived Mukhin of his physical liberty through improper detention without the possibility of bond under § 1225(b)(2)(A). *Hamdi v. Rumsfield,* 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by [the] government."); *Zadvydas,* 533 U.S. at 690 ("Freedom from imprisonment-from government custody, detention, or forms, of physical restraint-lies at the heart of the liberty [the Due Process Clause] protects; *Soto,* 2025 WL 2976572, at *8. The second factor, risk of erroneous deprivation and probable value of additional safeguards, also weighs heavily in Mukhin's favor because Mukhin remains erroneously detained without

---

[4] Mukhin also asserts that his prolonged, ten-month immigration detention without bond violates due process. (Doc. 1, at 5). However, the Court need not evaluate whether Mukhin's detention has become unreasonable under *German Santos v. Warden Pike County Correctional Facility,* 965 F.3d 203 (3d Cir. 2020) at this time given that his detention under an inapplicable statute constitutes a due process violation under *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976).

the possibility of release on bond pursuant to § 1225(b)(2)(A). *See Soto*, 2025 WL 2976572, at *8 (citing *Barrios v. Shepley*, No. 1:25-cv-00406-JAW, 2025 WL 2772579, at *11 (D. Me. Sept. 29, 2025); *Zumba v. Bondi*, No. 25-cv-14626, 2025 WL 2753496, at *10 (D.N.J. Sept. 26, 2025)) (finding the second *Mathews* factor weighs in petitioner's favor when subject to erroneous detention without a showing from the government that petitioner presented a public safety or flight risk); *see also Kashranov*, 2025 WL 3188399, at *5 (finding the lack of any individualized assessment creates a high risk of error). The third *Mathews* factor, the government's interest, also weights in Mukhin's favor. Generally, the government's interest in detaining noncitizens is to ensure the appearance of noncitizens at future immigration proceedings and to prevent danger to the community. *Zavvydas*, 533 U.S. at 690; *Soto*, 2025 WL 2976572, at *8. Here, Mukhin poses no such risk to the government's interest in detaining him. Mukhin has complied with the conditions of his parole by submitting a timely asylum application, attending his immigration court hearings, and obtaining employment authorization and a social security card. (Doc. 1, at 2). The government presents no evidence that Mukhin has a criminal record outside of the uncharged domestic incident, and the government does not allege that Mukhin poses a fight risk or risk to the community. (Doc. 4; Doc. 4-3, at 2-3). As each *Mathews* factor weighs in Mukhin's favor, his mandatory detention under § 1225(b)(2)(A) violates his procedural due process rights. Accordingly, Mukhin's petition for writ of habeas corpus is **GRANTED**, and Lowe is **ORDERED** to release Mukhin from custody.[5]

---

[5] The Court notes that Mukhin also seeks relief in the form of attorney's fees and costs under the Equal Access to Justice Act. (Doc. 1, at 26). The Court cannot award attorney's fees without first assessing affidavits and other evidence regarding the reasonableness of the fees sought. *See Toshiba Am. Med. Sys., Inc. v. Valley Open MRI & Diagnostic Ctr. Inc.*, 674 F. App'x 130, 133 (3d Cir. 2016) (nonprecedential) (noting that the party seeking attorney's fees

16

## V.      CONCLUSION

For the foregoing reasons, Mukhin's petition for writ of habeas corpus is **GRANTED**.

(Doc. 1). Lowe is **ORDERED** to release Mukhin from custody. Lowe is also permanently

enjoined from re-detaining Mukhin under § 1225(b)(2)(A). Mukhin may move to reopen this

matter if Lowe seeks to detain him under § 1226(a) and fails to schedule a timely bond hearing.

An appropriate Order follows.

**BY THE COURT:**

**Dated: February 25, 2026**          */s/ Karoline Mehalchick*
                                      **KAROLINE MEHALCHICK**
                                      **United States District Judge**

---

bears "the burden of producing evidence as to the reasonableness of the fees" and reversing a district court's grant of a request for fees based "solely [on] a declaration stating the amount claimed"); *see also Ohm Sys., Inc. v. Senergene Sols., LLC*, No. CV 23-1340, 2025 WL 2772612, at *2 (D.N.J. Sept. 29, 2025) (noting that a court cannot assess a request for attorney's fees without sufficient evidence regarding the reasonableness of the fees sought). Accordingly, Mukhin must request attorney's fees in a separate motion with accompanying exhibits.